Good morning, Your Honor. Rosemary Gordon-Panucco, new name, got married in the meantime between the briefing and this. Congratulations. Well, thank you very much. I represent the Petitioner Appellant, Wayne C. Evans, in this case. And my first question is, do you have any particular concerns in this case that you want me to address? Yeah. How do you extend quorum nobis to these facts? How do I extend quorum nobis to these facts? Well, first of all, there's four requirements. You're very well aware of those. And the first requirement, I believe the United States has conceded to the extent that it doesn't have an existing remedy or the usual remedy in this particular case. Now we're left with the reasons for the delay, which are that my client really actually wanted this litigated, thought his attorney was a P.I., but she wasn't, as you can see from the docket entries in Number 11. And she also, after he got out, there was a lot of discussion. This has been under discussion, the amount of restitution and how it was determined. That's the – that has been an issue in this, in a sense. You can see it at the sentencing. You can see it in the civil case. You can see it in the sentencing. That runs throughout the whole case in this thing here. Why he didn't file a petition for habeas, I have no idea. The question then becomes, what would the effect on the waiver provision be on chilling his thought or his attorney's thoughts for filing an appeal? Again, I wasn't the trial counsel. I, perhaps, have been a little bit bolder in taking a shot at a notice of appeal and then fought with the government over whether the waiver applied or not. But that wasn't a – Why wouldn't a waiver apply to both collateral and direct appeal? The waiver provision extends to both. And we have cases that say if you don't waive collateral appeals, then – collateral attacks, then, you know, those are open. But if you waive collateral attacks, those are foreclosed. So – Well, actually, you have cases that say if you waive the right to appeal, you waive an attack on the – on the sentencing. But then you get to the situation in Phillips. No. But, yeah, we've had a specific case on – on collateral attacks. And so that leads to the question I had. I don't want to diverge you from Judge Hawkins, because I think that Judge Hawkins' question is the key of the case. But why doesn't – why doesn't the waiver extend to this proceeding? If – if – is Coram Notice a collateral proceeding? It has to be. Yeah. It is a collateral proceeding. So when he waived his right to collateral proceedings, why doesn't it apply here? Well, I'm going back to the reasoning in the Phillips case that talks about the fact that, yes, you can waive it, and the waiver provision for most purposes would be absolute. And we – but it doesn't leave a defendant such as Mr. Evans in the position of being sentenced at the whim of the court. And that's what our contention is, is that the sentence in a sense was illegal because it was not determined based on the victim's losses. So you have a fundamental problem with how the district court handled the restitution issue that then gets you, in a sense, around the waiver or – how can I say? How can you waive the fact that the court, in a sense, illegally sentenced him because it sentenced him based on restitution for profits that he supposedly made as opposed to losses actually suffered by the victim? So – and that's something that I believe there's – is it the – is it Ropeland-Jones is a case that's quoted in Phillips that talks about you – even though you – since we waive that right, you don't have to suffer being sentenced at the whim of the district court. So there's got to be some safety valve in there where when the court really – Well, it isn't that the restitution amount was kind of off the wall. If you look at the pre-sentencing report, there's pretty close correlation. Except that the pre-sentencing report is relying on the DeRoche thing, which, again, a – again, a – Well, your client knew that at the time that he went forward and effectively waived his rights. It wasn't that he was suddenly caught by surprise by an illegal sentence or something that wasn't within the realm of possibility. That report had been the subject of a pretrial motion where the government said, look, we're not going to use it, we're going to prove the damage to the nation by other means, because profit is not relevant to that particular thing. And it's the conflict of interest was what the issue was going to be in the criminal trial. So given the government's discussion of how that report is not going to apply in the pretrial proceedings, and, again, the trial counsel did object to the report itself because of the way it was calculated, the way it was based on it, and, yes, the report – the probation department relied on that, yes, the trial judge relied on that, but wrongfully so, because it was a determination of profits made by a plaintiff's expert and who just used, well, here's one bank account, not taking into – I'm sorry, not taking into account that the monies paid to my client from FEMA occurred prior to the date where he entered into that contract for no conflict, about $900,000 of that. DeRoche doesn't take account of that. But the DeRoche report, I think, was the problem in the sense that it was just an easy out for everyone, including the government, to say, well, let's use that one, but it's not victims' losses. And if you can look at the sentencing transcript, the Court struggled with, well, what did the nation really lose? I mean, FEMA paid the money, they – the work got done, they got the completed project, so where are the losses? And the nation wasn't documenting that. And the only thing they really had, probation had, was that particular report. And, again, it was contended that's not an accurate thing. They – he was guilty, but he was thinking – But except what you say, except what you say, does that open up every case to challenge on restitution after the sentence has been completed? Because essentially your argument was it was improperly calculated. And that would be the argument in any restitution case. We have a lot of witnesses, they contested it or don't contest it, but they feel that it's improperly calculated. Right? Yes and no. There's a slippery answer for you. It's one of those things where – and I forgot to start my watch. There's my timer. Thank you very much. I'm sorry, Your Honor. I think that you're in the situation where that's a case-by-case determination, because in this one, they took the profits and assigned that as the losses to the nation, which is just plain wrong under the Victim and Witness Protection Act and things like – I mean, and under the case law. That's not how you do restitution. Whereas you might have a case where, okay, we disagreed about that, how it's going to get, you know, calculated necessarily. That's more of a factual issue as opposed to a wrongful legal basis. And I think you have to make that distinction. Excuse me. Your argument is that properly calculated, in fact, the Tohono O'odham nation suffered no loss. Essentially. Is that your argument? Yes. Why did your client pay $800,000 in settlement of the civil suit? I was not – A, not a party to that, but I would assume that it was based on what they thought the civil suit would result in making that a fair particular settlement. And actually, my – it was the Voice of God religious organization that paid that particular amount. Of course, they were also defendants in that case. What argument – we understand there was no appeal, but what argument could have been made on appeal that wasn't made in district court vis-a-vis restitution? I think it would be the same argument I'm standing here making now. Okay. You have about two minutes. You want to save it for a rebuttal? Yes, I will. Okay. Thank you for your argument, and congratulations again. Thank you very much. We'll hear from the government at this time. May it please the Court, my name is Bruce Berg. I'm the assistant United States attorney here on behalf of the government. I would suggest to you that there are basically four different reasons why this appeal ought to be denied. The first one is that, in fact, the entire proceeding has been waived by the waiver in the plea agreement. This is not a Phillips-type situation because the problem in Phillips was the sentence in that case, the restitution, in fact, went to counts to which had been dismissed as part of the plea agreement. And the plea agreement did not specify that restitution would be allowed on that basis. Here, by contrast, it was very clear in the indictment and in the plea agreement that we were talking about a ceiling amount of $1.56 million from which the district court then deducted all of these things. So there was that amount of notice. It was in the indictment and it was in the plea agreement. So there was, in fact, not a Phillips-type problem of a lack of notice of what the potential restitution might be. Additionally, the plea agreement specified that the defendant would be culpable or liable for a fine of up to $250,000 on each of the two counts to which he pled, making a potential fine of $500,000. And the Crawford and the other case which I offered to you in the 28-J letter indicate that, worst case, even if you don't even talk about restitution in a change of plea, it's a harmless error if, in fact, the defendant knew that there was that kind of a cap on the fine amount. So no matter how you slice it, there was adequate notice to the defendant and it was a good waiver. That means, basically, the appeal was gone and this collateral proceeding, which the telling case specifically calls a collateral proceeding, was waived and that's the end of the story. I think there might be an exception on ineffective assistance of counsel on all of this, and I suppose that might be the hook by which you get through all the waivers. Well, that would be the attempt. But as I pointed out in the brief, the only ineffective assistance claim that has been made has not to do with the appeal or whether an appeal should have been taken, but about the performance in the sentencing. And so what is really providing the block here is no appeal was taken and no explanation for that. There's nothing in the record to support Ms. Gordon's assertion that, in fact, the defendant wanted to appeal. And, of course, you have to have a district court finding or at least a hearing to provide that kind of, quote, cause for the failure to appeal, which there is none. So we basically have a waiver. On the other hand, assuming that the court would, for some reason, find that waiver not operative, then he should have appealed. But he did not, and no good reason has been shown why he didn't. And so he has failed that particular prong of the Quorum Novus test. The third point that I'd like to make goes to Judge Hawkins' original question is, do you even extend Quorum Novus relief to this kind of a situation? And the answer is no. Historically, from the Morgan Supreme Court case all the way down, it's been continuously categorized or described as an extraordinary remedy for dealing with unjust convictions. And in no case in this circuit that I've found, nor, in fact, in any other circuit that I've found, has a naked monetary penalty of some kind, a fine restitution forfeiture, been allowed to be the basis for a Quorum Novus relief. When, for example, in a telling case, they were attacking the underlying conviction and there was restitution involved, it was suggested, yes, that might be part of the remedy if, in fact, conviction is overturned, but never a monetary penalty by itself. And that goes back to the fact that if you look at, for example, Morgan, what kind of resurrected Quorum Novus from limbo, it made the point that what is being dealt with are these ongoing consequences. And all the case law, particularly the Seventh Circuit case law, but it's even kind of implicit in Morgan itself is that we're not talking about something in the nature of a fine or a restitution order. We're talking about civil disabilities, inability to practice law, inability to vote. The potential, for example, that a criminal conviction would be used to increase the sentence some point down the line. But there is no suggestion that it should extend to a naked monetary fine. Suppose that after these events, the Tohono O'odham Nation had had a big three or whatever they are now, CPA firm come in and audit all of their books, including the enterprise that Evans was involved in, and gave them a verified audit that told the tribe in fact that the tribe had suffered no loss, zero loss as the result of anything Evans did. Quorum Novus would not be available to correct that. I don't believe so. And it's simply a fact that it's established as an extraordinary remedy for narrowly tailored circumstances. And it's never been applied to a situation like this. So a restitution order that's based on facts that turn out to be absolutely incorrect. In this kind of circumstance, Quorum Novus would not reach it. I suggest not. But again, that's a purely hypothetical situation, which is not this case because there was a good worst answer to a hypothetical question is to say it's not this case. I know it's not this case. That's why I ask a hypothetical question. I'm trying to test the limits of your assertions here. You say it couldn't reach that, would never reach that. Because in 50 years since Morgan, it had never has as far as I've been able to go. Why theoretically couldn't it? Let's let's take a restitution order that comes out of the left field restitution to a buddy of the judges. I guess I'm at a loss because, again, there is nothing in the case law which suggests it ought to go simply to monetary amounts. But why shouldn't it? Tell me. I know you're saying that it hasn't. And I guess the whole purpose of it, as described by Morgan in all subsequent cases, is to attack the conviction. And there is no attack on the conviction here. It's simply on the method by which the restitution was computed in this case, which I would suggest to you was not erroneous. There is it was a very reasonable and appropriate standard or approach to this, which is that they started off with the roughly one and a half, one point six million dollars, and then subtracted back out of that the things for which there was some reasonable explanation, including I would point out there was some credit, if you will, given to Mr. Evans for the fact that there was indeed work accomplished. It's not like it was assumed that it was totally valueless to the tribe. That was a factor that was, in fact, discussed at the sensing hearing and which the district court indicated that it was taking into account. So they took this base amount. This this was basically the Darosh approach, which the court found was appropriate, which was to take the base amount of the loss, subtract out of it the eight hundred and twenty thousand dollars, which was given back approximately two hundred thousand dollars for fuel costs and other amount for the value of the work. And it ended up with this roughly one hundred thirty eight thousand dollars, which could not even under the most lenient, if you will, calculation be justified. And the basic point here is, as the district court pointed out, Mr. Evans was not entitled to anything. This was a conflict of interest situation, which he should have disclosed. And so he should not have had dime one out of that. So he really has very little to complain about when he's required to give back the money to which he had absolutely no entitlement. I would suggest that the method that was used here. Yes, it could have been perfected, perhaps. But the Gordon case makes the point that when we're talking about restitution, Congress said we want a relatively reasonable expedient process to get the money back into the hands of the victims. And it was theoretically possible to go through a full blown civil type trial to bring in a big three firm or something of that nature. But nobody wanted to do that. This is essentially what all parties agreed was an approximation. Yes, but a reasonable one. And that being true, I'll point out that the district court found no ineffective assistance in the performance of Rosemary Marquez, different Rosemary, who represented the defendant in trial. He specifically found that in his order denying Coronobus. So we have no ineffective assistance. We have a reasonable approach. We have a waiver, which really ought to be the end of the story right there. So this appeal should be denied. Okay. You're out of time. Thank you for your argument. Rovada. Truthfully, Your Honor, that was a very interesting question about extending the situation to restitution. And I come back to, and I agree, the Coronobus is an extraordinary writ. And I think that a blanket prohibition on it ever being used for restitution is perhaps not the way to go, but it certainly should be reserved for extraordinary situations. And the hypothetical you pose would certainly be an extraordinary situation. Our argument is that this is an extraordinary situation, and that's up to you to decide. The interesting thing that Mr. Drescher or, excuse me, Mr. Ferg said was that my client should not have had dime one out of this contract, but that ignores the fact that he had been working for the nation for a number of years before he became the manager, before that conflict of interest. He had already started on the FEMA project prior to becoming the manager and then creating that conflict of interest. In fact, a lot of that work was done. And that is where the problem comes in to using that report, which didn't factor that in, just took all the money that FEMA paid him and then subtracted money in, money out from money in, and then arrived at his figure. So there's a lot of problems. And I think that the record, if you look at the sentencing, the district court did struggle with that. And he kept going back to the fact that, for example, on page 14, the court says that it looked at the depositions, documents, expert reports, and from all of that, he did not come up with that amount of money. That's so incorrect. The district court also noted that other out-of-pocket expenses weren't included, attorneys' fees, cost of litigation. And so I suspect if we granted relief here, there's a possibility your client could owe more money. That's a distinct possibility. And certainly, we fall within the be careful what you wish for, you might get it theory with that. But in any event, the district court did. And part of it was that the nation was not forthcoming with any figures. And certainly when they spoke at the sentencing, they didn't ask for restitution. They just wanted a maximum sentence. So there's more in play here with regard to the fact that the government wasn't  as forthcoming at all with any amounts that they actually lost. Thank you very much, Your Honor. Thank you both. Did you both drive up from Tucson this morning? Thank you for coming. Appreciate it. The case just argued will be submitted for decision and will proceed to Himes v. Stephen.
judges: Hawkins, Thomas, Clifton